May it please the Court, I'm Zachary Nightingale with Avantika Shastri for Petitioner Mohamed Shamim, long-term lawful permanent resident whose family is exposed. Excuse me, would you mind speaking into the microphone? Thank you. Somewhat louder, I can't quite hear you. I'm not as tall as them. I do plan to ask for two minutes for rebuttal, please. You have a clock in front of you, whatever's left is yours. I would like to point out to the Court on the issue of Penal Code 69 how a violation of Penal Code 69 is not necessarily a crime of violence under either 16a or 16b. If the Court rules in Petitioner's favor on that point, then there has to be a remand, either for termination or relief. Penal Code 69, the California courts have determined, is directed at attempts to deter an executive officer. And that deterrence of an executive officer can be through a threat, a threat of, quote, violence. The word violence under California law is well understood by this Court in Ortega, not to be the same as a crime of violence. Violence under California law can be a simple battery, a shove, a touch. The California courts have acknowledged that applies to the Penal Code 69 deterrence statute as well. You can deter an officer by threatening a misdemeanor shove. The People v. Superior Court Anderson case cited by Respondent actually discusses that very point. You can also violate the Penal Code deterrence statute by making a threat by mail. The same case involved a letter written to a mayor with a threat in it. And the courts concluded that is a way to violate Penal Code 69. Another case cited in the materials, MLB, involved a threat of arson. So the threat involved could be anywhere from a threat to one's life, the threat of a misdemeanor touching, or an arson. A letter to a mayor threatening arson, let's say to one's own property. I don't want you to continue with this eminent domain proceeding, or I'll burn my own property. This Court has held in Jordison, burning your own property arson is not a crime of violence. This Court has held in Malta, a threat by a letter is not a crime of violence because under 16b, there's not a substantial likelihood force is going to be used in the course of the offense. So if you look at how the California courts have applied Penal Code 69, they have already held. It includes threats by mail. So you could have someone do a threat by mail, threatening arson to one's own property. That is an attempt to deter under 69. It is not a crime of violence under either 16a or 16b. So the board was wrong in this case when it looked at Penal Code 69 and said it's always a crime of violence. They just got it, they just got the legal analysis wrong. Penal Code 69 is not always a crime of violence as that term is understood under the definition 18 U.S.C. 16a or b. Is the board bound by our precedent, by Jordison? It is because we're talking about a ---- Jordison was not a, if I remember correctly, or at least it was an immigration case. Yeah, exactly. And in particular, what we're talking about in all these cases is the aggravated felony term. How about the CMTs? The CMT is a different matter, right? And I'll be happy to talk about that. But if I could finish the thought on the aggravated felonies, because I do think it's different. The aggravated felony is a term that comes up both in immigration and criminal law. There's no deference in that situation. There is only this Court's de novo review. So this Court's determination as to what entails an aggravated felony and what the definition means, that is not a deference issue. That is, this Court reviews it. Even after Marmolejo accomplished? Yes, because Marmolejo dealt with moral turpitude. So let me address that. What Marmolejo said is ---- But it had a more general approach, didn't it? I mean, the ---- what Marmolejo was embodying is a theory of deference to the Board's legal interpretation. Only in situations where there's a gap in the statute that Congress would have left to the agency. Marmolejo said the ---- what exactly constitutes moral turpitude is such a gap. Aggravated felony has never been held to involve such a gap. And certainly, when the term aggravated felony comes up in a criminal law situation, there's no agency to defer to. It's the exact same definition. So I think there's a fundamental difference if you're talking about an aggravated felony, which Marmolejo never even claimed to address, versus a moral turpitude where absolutely the term moral turpitude is left to the agency. Now, also in Marmolejo, I might point out, this Court said we don't accept what the Attorney General or the agency said was moral turpitude. Because it was not sufficiently particularized. This Court went with its own prior case law, the concurring decision in Navarro-Lopez, which explicitly laid out the currently enforced definition of moral turpitude, which I might point out included a reference to Carr. This is on the moral turpitude question. They ---- that definition written by Judge Reinhart specifically says even serious crimes are not always moral turpitude when it doesn't involve fraud. And he cited Carr, and Carr is the case where this Court found that 245A2, assault with a deadly weapon that happens to be a firearm, is not moral turpitude. And the Reinhart concurrence cites the words, even serious crimes such as assault with a deadly weapon are not necessarily moral turpitude. But Marmolejo seems to open up a new field. For the application, the application of the definition to a particular case. But what amounts to the definition, that's not left to the agency unless the agency makes it sufficiently particularized, which this Court has found they have not yet done. They certainly didn't do it in this case, in Mr. Chemine's case. So with respect to the vandalism finding that it is, in fact, a crime of moral turpitude, what deference is ---- they cite a couple of cases which I've looked at. But what level of deference do we give to that? What I would say, Your Honor, is you have to ---- you do not defer on the definition. You have to accept the definition, which this Court has said is the one I just mentioned in the Navarro-Lopez. Then you have to look at, as a legal matter, how would it apply. And because that definition includes a minimal amount of harm, a minimal serious criminal activity in a non-fraud case, our argument is that vandalism doesn't even reach that. Vandalism can be committed under California law by taking an erasable pen on a window of a movie theater. That was one case that we cited. So it involves minimal contact. And we did a 28-J on Kawashima specifically for this point because our position is that when you look at the California vandalism statute, it's missing that element of seriousness that would bring it into moral turpitude. I don't think you have to defer. What element is it missing? The level of seriousness to bring it into it. And what's your example of an unserious crime here? There's a California case where somebody took an erasable pen and wrote on the window of the projection house of a movie theater. And the California court said, even though you can just erase it, it's still vandalism. There's another case where somebody had a ‑‑ they were in a rented home and there was a lock on their bedroom and they didn't have the key, so they broke the lock to get into their own bedroom, much to the mother's disapproval. Again, the California court said that's vandalism. Right? Those examples don't rise to the serious crime level that this Court has said is a bare minimum for moral turpitude. Do we know what your client did? Well, that's another point, Your Honor. No. I think the board screwed up, because the board took the charging document. The answer is no, because the government never submitted a record. Well, should we remand following the attorney general's new methodology and say send it back for ‑‑ take evidence? My answer is no, Your Honor. First of all, under Kawashima, I think it's missing that element. Under Kawashima case, it's missing the element. And number two, because the government had two chances. There were two motions to reopen in this case, and the government responded with documents both times. And the government had the opportunity to present those documents. It knew it was the issue, and they didn't. I do have a minute left, and I would ask to reserve for rebuttal. Okay. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. Good morning, Your Honors. Carol Federighi on behalf of the Respondent, the Attorney General, on this matter. After his admission as a lawful permanent resident in 1980, Mr. Shamim was convicted of several criminal convictions. Three of those were involved in the proceedings below. He had a 1994 conviction for assault with a deadly weapon, and then he had a 2006 conviction for vandalism, and also a 2006 conviction for resisting an executive officer. The Court need only address the resisting an executive officer conviction. That completely resolves the two motions to reopen that are on review before the Court. The Board basically found sort of the lynchpin of its reasoning. It found eventually that Petitioner was qualified for reopening, but determined that reopening was not warranted because it would be futile. And the Board found that reopening was futile because the Petitioner had been convicted of an aggravated felony that both would render him removable and ineligible for relief. Therefore, there was no point in reopening the case, since he would not be found   that could be committed by a threat that was not of violence at all, but simply due to a kind of blackmail threat, or it could be violated by touching. Neither one of those seemed to fall within the crimes of violence. Respectfully, counsel is incorrect on what's necessary for a threat to be a violation of Penal Code 69. California case law has held that the threat must be the threat of unlawful violence, and that's what the Court said in the Superior Court Anderson case and also Manuel case. In Anderson, the threat was a threat to kill somebody, not just a threat of shoving. The Court, and counsel, also has misinterpreted the California interpretation of violence versus force. Under California case law force, which is only involved in the second part of 69, force can be anything as minimal as touching. But violence is violence. So that comports with the Federal definition of crime of violence. But isn't it force or violence? That's for the second part of the definition of 69. The first part requires violence or a threat, and the California courts have held that that means a threat of unlawful violence. So the first part of 69 meets the definition of crime of violence in 16a, which requires the use or the threatened use of violence. So it's our job to look at the California case law and see what that means. Is that right? That's correct, Your Honor. And that's certainly what you've done in other cases, analyzing criminal offenses. When we do that, what do we find? You find we find cases where threatening violence to oneself. It's also found to be punishable in 69, right? That is correct. He has highlighted one of those cases. That's the unpublished case. Well, respectfully, that is a legitimate question in this case, but that is an issue that he did not exhaust below. He never raised the issue of whether 69 had the necessary element of violence to another person below. Since it was not exhausted, it is the court lacks jurisdiction. Well, how specific do you have to be in raising issues below? He did dispute that 69 was a crime of violence, right? He did. This Court has held that you need to be pretty specific in raising specific issues below. As held in the court the case cited in our brief Morales-Allegra, the court held that you must raise your specific claim below in order for this Court to have jurisdiction. The only issues that he did raise below are whether the length of the sentence met the one-year requirement in 1101A43F, and whether 69 could be satisfied by just de minimis touching, therefore, you know, moving it outside the crime of violence rubric, and then also the other issue of whether the government could introduce a new charge in connection with a motion to reopen. Those were the only exhausted issues on the crime of violence issue. Therefore, anything else that he seeks to raise herein is not properly before the court. Well, what about the minimal touching issue? Okay. That goes to 69, the second part of 69, which states or criminalizes resisting an officer by the use of force or violence. As I mentioned before, force in California law could be something as minimal as de minimis touching. So, therefore, the second part of 69 does not meet the first part of the definition of crime of violence in 16A. But it does meet the second part of the definition in 16B. 16B says a crime of violence is any felony that requires the, that carries a substantial risk of the use of violence in the commission of the offense. And the courts have universally held that resisting an officer by whatever means in the performance of his duties carries a substantial risk that the encounter will escalate and require the use of violence, either by the officer or by the individual who is resisting. Well, how does carrying a substantial risk help you? I mean, that sounds like it would, something in negligence that was a risk that something else would happen. It's not exactly immediately clear how that helps you. Well, the Leocow case held that it could be that the 16B refers to anything that carries sort of a reckless disregard that there's a risk of substantial injury arising from the commission of the offense. And resisting an officer in any means, by any means. So you would say it was reckless. And that is different from negligence. It's reckless with regard to the risk involved in the use of physical force eventually being required. The offense itself does require intent, you know, the intent to resist the officer in the performance of his duties. So there is intent involved in the offense. The recklessness goes to whether substantial risk will be created that physical force would be used. And the case law is clear that resisting the performance of an officer in the commission of his duties does carry a risk that it will escalate. The crime is an intentional crime. Yes. And this collateral effect isn't essential to the crime. That's correct. The collateral effect is addressed by the definition of crime of violence, but it's not inherent in the crime itself. I mean, it's not part of the elements of the crime under California law. Are you going to ‑‑ I know counsel didn't spend any time addressing the CIMT issue, but he may have a rebuttal. Sure. Because Judge Noonan asked the question. I don't think counsel ever got the time to answer him. But I have a feeling Judge Noonan may be more assistant on the rebuttal. So since this is your only chance to talk, would you like to address that? Yes, I would. If the court does find that resisting an executive officer is not a crime of violence and an aggravated felony, then our position is the court must remand the case for two reasons. One, because at that point Mr. Shamim might potentially be eligible for cancellation of removal, and the board and the agency never addressed that possibility below, and so we need to remand for it to address that possibility. We also ask for remand for the agency to address or reconsider whether the two other offenses, as well as this offense, are crimes involving moral turpitude under Silva Trevino and Marmolejo Convas. So your position, the short answer on, even shorter than you were giving, is if we don't agree with you that the 69 issue is dispositive, you're asking for a remand. Exactly, Your Honor. Okay. That's very concise. Yes. And we don't believe you need to address the CIMT issues in this case. We ask that the board be allowed to reconsider them in light of the framework, the new framework the Attorney General set forth in Silva Trevino for these sorts of cases, as well as this Court's decision on Marmolejo Convas. And if there's nothing further, on the one-year issue, which is one of the issues he did exhaust, whether he was sentenced to one year on this offense, if you look at page 275 of the record, you see that he did receive a sentence of one year in jail for the crimes that he was convicted of in 2006. On the next page, it shows that all the other counts, the non-resisting executive officer counts, received a six-month sentence. So the one-year sentence by process of elimination clearly was assigned to the resisting executive officer offense. Therefore, he did have the necessary sentence to meet the definition in 11-01-43-F. If there are no further questions, I'll just sum up. The resisting executive officer is an offense that is a crime of violence under both parts of the definition of crime of violence in 18 U.S.C. 16. Therefore, the Board properly concluded that there was no point in reopening this case because Mr. Shamim was removable and ineligible for any form of relief, and therefore, the petitions for review should be denied. Thank you. Thank you. Well, perfect timing. Just briefly, Penal Code 69, to answer the Court's question, was never even charged as moral turpitude, and the counsel raised it in the briefing citing the Braseno case. The Braseno case was pre-real ID where the Court had jurisdiction to determine its own jurisdiction, and therefore, reached those jurisdictional issues about moral turpitude. Today, there's a second jurisdictional grant of all legal issues. This case only raises legal issues. So the Court doesn't have to reach that secondary jurisdictional issue about what are all the moral turpitudes. So since it was not charged as moral turpitude, the Penal Code 69, it's a red herring that this Court doesn't need to reach it. If the Court finds the case. Isn't there a 10-year limitation on that anyway? I mean, it didn't occur – the conviction didn't occur within 10 years of his date of admission. Well, actually, as long as he has two, he's deportable. Our argument is he doesn't have two because the vandalism couldn't possibly be moral turpitude, and we also – which would be enough for us to win because he's only charged with two. We also think that 245A1 is not, and therefore, even if Penal Code 69 is, it's only one. So it doesn't get the government any deportability ground. So we think it should be remanded with directions to terminate. And I will correct one thing counsel said. People of the Superior Court, quote, Section 69 is directed not at the threat itself but at the attempt to deter executive action. If a threat to commit a misdemeanor were found by the trier-de-facto to be a serious attempt to deter the executive action, the degree of force threatened would not be significant. They're saying that even if it's – all you're doing is threatening a misdemeanor, if it's to deter, it's still Penal Code 69. That's what our argument is based on on that point. Assuming that that's – what's wrong with our argument in your view? Pardon me? What's wrong with our argument in your view? What is wrong with the argument? Yes. Our argument is that because Penal Code 69 can be committed with a threat for a de minimis touching, there's no use of force, there's no threatened use of force, and because it can be committed remotely by mail, then there's no substantial likelihood force will be used in the commission of the offense. That's Malta. I will also point out, Your Honor, regarding the exhaustion, that Jordison, the case that held that you could burn your own property, came out after all the briefing, all the motions in this case. So while its course goes on now, it wasn't citable at the time. So we think that we raised it. But the argument could have been made, and they say you didn't make the argument. The argument was made that the statute is not a crime of violence and it doesn't fall under 16a or 16b for various reasons. We didn't give that exact particular subpoint, but I don't think the law requires making every identical subpoint. I think it just represented the issue to the board. The board was fully informed of the issue and could have done their job, but they didn't. And I would like to add on that point, which I sort of stopped before, which is the modified categorical approach here is not within the board's ability, because there's no evidence of a plea or a jury finding, a jury verdict, that the government never submitted that. So the board was completely wrong to consider the charging document where they said there was substantial damage in the vandalism, for example. That's not part of the record, properly part of the record, because there's no evidence he pled to that or was found guilty by the jury of that. All we know is there was a conviction, but not necessarily to those terms. So we're dealing with a pure categorical approach, and that's a fundamental error the board made. It's a legal question. You don't have to remand to the board to say please redo this. It's a legal question. The board just got wrong. This Court can review it de novo and do the proper categorical approach. That we think is the appropriate approach, Your Honor. Roberts. Thank you. Thank you.
judges: Kozinski, Noonan, Edmunds